IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

| | |
|---|---|
| SHAD O. S.,[1] | ) |
| | ) |
| **Plaintiff,** | ) |
| | ) CIVIL ACTION |
| v. | ) |
| | ) No. 23-4076-JWL |
| MARTIN O'MALLEY,[2] | ) |
| **Commissioner of Social Security,** | ) |
| | ) |
| **Defendant.** | ) |
| _____ | ) |

**MEMORANDUM AND ORDER**

Plaintiff seeks review of a decision of the Commissioner of Social Security denying Social Security Disability Insurance (SSDI) benefits pursuant to sections 216(i) and 223 of the Social Security Act, 42 U.S.C. §§ 416(i) and 423 (hereinafter the Act). Finding no error in the Administrative Law Judge's (ALJ) decision, the court ORDERS that judgment shall be entered pursuant to the fourth sentence of 42 U.S.C. § 405(g) AFFIRMING the Commissioner's final decision.

**I.     Background**

---

[1] The court makes all its "Memorandum and Order[s]" available online. Therefore, in the interest of protecting the privacy interests of Social Security disability claimants, it has determined to caption such opinions using only the initial of the Plaintiff's last name.

[2] On December 20, 2023, Mr. O'Malley was sworn in as Commissioner of Social Security. In accordance with Rule 25(d)(1) of the Federal Rules of Civil Procedure, Mr. O'Malley is substituted for Acting Commissioner Kilolo Kijakazi as the defendant. Pursuant to the last sentence of 42 U.S.C. § 405(g), no further action is necessary.

Plaintiff protectively filed an application for SSDI benefits on June 3, 2021. (R. 17, 182-83). After exhausting administrative remedies before the Social Security Administration (SSA), Plaintiff filed this case seeking judicial review of the Commissioner's decision pursuant to 42 U.S.C. § 405(g). Plaintiff claims the ALJ erred in assessing both his physical residual functional capacity (RFC) and mental RFC and in relying upon the testimony of the vocational expert (VE).

The court's review is guided by the Act. Wall v. Astrue, 561 F.3d 1048, 1052 (10th Cir. 2009). Section 405(g) of the Act provides that in judicial review "[t]he findings of the Commissioner as to any fact, if supported by substantial evidence, shall be conclusive." 42 U.S.C. § 405(g). The court must determine whether the ALJ's factual findings are supported by substantial evidence in the record and whether he applied the correct legal standard. Lax v. Astrue, 489 F.3d 1080, 1084 (10th Cir. 2007); accord, White v. Barnhart, 287 F.3d 903, 905 (10th Cir. 2001). "Substantial evidence" refers to the weight, not the amount, of the evidence. It requires more than a scintilla, but less than a preponderance; it is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Richardson v. Perales, 402 U.S. 389, 401 (1971); see also, Wall, 561 F.3d at 1052; Gossett v. Bowen, 862 F.2d 802, 804 (10th Cir. 1988). Consequently, to overturn an agency's finding of fact the court "must find that the evidence not only supports [a contrary] conclusion, but compels it." I.N.S. v. Elias-Zacarias, 502 U.S. 478, 481, n.1 (1992) (emphases in original).

The court may "neither reweigh the evidence nor substitute [its] judgment for that of the agency." Bowman v. Astrue, 511 F.3d 1270, 1272 (10th Cir. 2008) (quoting

Casias v. Sec'y of Health & Human Servs., 933 F.2d 799, 800 (10th Cir. 1991)); accord, Hackett v. Barnhart, 395 F.3d 1168, 1172 (10th Cir. 2005); see also, Bowling v. Shalala, 36 F.3d 431, 434 (5th Cir. 1994) (The court "may not reweigh the evidence in the record, nor try the issues de novo, nor substitute [the Court's] judgment for the [Commissioner's], even if the evidence preponderates against the [Commissioner's] decision.") (quoting Harrell v. Bowen, 862 F.2d 471, 475 (5th Cir. 1988) (brackets in Bowling)).  Nonetheless, the determination whether substantial evidence supports the Commissioner's decision is not simply a quantitative exercise, for evidence is not substantial if it is overwhelmed by other evidence or if it constitutes mere conclusion. Gossett, 862 F.2d at 804-05; Ray v. Bowen, 865 F.2d 222, 224 (10th Cir. 1989).

  The Commissioner uses the familiar five-step sequential process to evaluate a claim for disability.  20 C.F.R. § 404.1520; Wilson v. Astrue, 602 F.3d 1136, 1139 (10th Cir. 2010) (citing Williams v. Bowen, 844 F.2d 748, 750 (10th Cir. 1988)).  "If a determination can be made at any of the steps that a claimant is or is not disabled, evaluation under a subsequent step is not necessary."  Wilson, 602 F.3d at 1139 (quoting Lax, 489 F.3d at 1084).  In the first three steps, the Commissioner determines whether claimant has engaged in substantial gainful activity since the alleged onset, whether he has a severe impairment(s), and whether the severity of his impairment(s) meets or equals the severity of any impairment in the Listing of Impairments (20 C.F.R., Pt. 404, Subpt. P, App. 1).  Williams, 844 F.2d at 750-51.  After evaluating step three, the Commissioner assesses the claimant's RFC.  20 C.F.R. § 404.1520(e).  This assessment is used at both step four and step five of the sequential evaluation process.  Id.

The Commissioner next evaluates steps four and five of the process—determining at step four whether, considering the RFC assessed, claimant can perform his past relevant work; and at step five whether, when also considering the vocational factors of age, education, and work experience, he is able to perform other work in the economy. Wilson, 602 F.3d at 1139 (quoting Lax, 489 F.3d at 1084). In steps one through four the burden is on Plaintiff to prove a disability that prevents performance of past relevant work. Blea v. Barnhart, 466 F.3d 903, 907 (10th Cir. 2006); accord, Dikeman v. Halter, 245 F.3d 1182, 1184 (10th Cir. 2001); Williams, 844 F.2d at 751 n.2. At step five, the burden shifts to the Commissioner to show that there are jobs in the economy which are within the RFC previously assessed. Id.; Haddock v. Apfel, 196 F.3d 1084, 1088 (10th Cir. 1999). The court addresses the errors alleged in Plaintiff's Social Security Brief.

## II.   Discussion

The court's review begins and ends with the final decision of the Commissioner and the administrative record upon which that decision is based. If the decision reveals the ALJ applied the correct legal standard and if such relevant evidence in the record as a reasonable mind might accept as adequate to support a conclusion supports the ALJ's findings, the court must affirm the Commissioner's final decision. This is so even if the record evidence might also support a contrary conclusion or if the court would have reached a contrary conclusion if its review were de novo. "The possibility of drawing two inconsistent conclusions from the evidence does not prevent an administrative agency's findings from being supported by substantial evidence. [The court] may not displace the agency's choice between two fairly conflicting views, even though the court

would justifiably have made a different choice had the matter been before it de novo." Lax, 489 F.3d at 1084 (citations, quotations, and bracket omitted); see also, Consolo v. Fed. Maritime Comm'n, 383 U.S. 607, 620 (1966).

### A.     Physical RFC.

Plaintiff first argues the ALJ's consideration of his allegations of disabling symptoms was inadequate and therefore erroneous.  An ALJ's evaluations of a claimant's allegations of symptoms are generally treated as binding on review.  Talley v. Sullivan, 908 F.2d 585, 587 (10th Cir. 1990); Broadbent v. Harris, 698 F.2d 407, 413 (10th Cir. 1983).  Such "determinations are peculiarly the province of the finder of fact" and will not be overturned when supported by substantial evidence.  Wilson v. Astrue, 602 F.3d 1136, 1144 (10th Cir. 2010); accord Hackett v. Barnhart, 395 F.3d 1168, 1173 (10th Cir. 2005).  Therefore, in reviewing the ALJ's evaluations, the court will usually defer to the ALJ on matters involving a claimant's allegations.  Glass v. Shalala, 43 F.3d 1392, 1395 (10th Cir. 1994).  However, such findings "should be closely and affirmatively linked to substantial evidence and not just a conclusion in the guise of findings."  Wilson, 602 F.3d at 1144 (quoting Huston v. Bowen, 838 F.2d 1125, 1133 (10th Cir. 1988)); Hackett, 395 F.3d at 1173 (same).

The Tenth Circuit has explained the analysis for considering subjective allegations regarding symptoms.  Thompson v. Sullivan, 987 F.2d 1482, 1488 (10th Cir. 1993) (dealing specifically with pain).

> A claimant's subjective allegation of pain is not sufficient in itself to establish disability.  Before the ALJ need even consider any subjective evidence of pain, the claimant must first prove by objective medical

5

>evidence the existence of a pain-producing impairment that could reasonably be expected to produce the alleged disabling pain. This court has stated: The framework for the proper analysis of Claimant's evidence of pain is set out in Luna v. Bowen, 834 F.2d 161 (10th Cir. 1987). We must consider (1) whether Claimant established a pain-producing impairment by objective medical evidence; (2) if so, whether there is a "loose nexus" between the proven impairment and the Claimant's subjective allegations of pain; and (3) if so, whether, considering all the evidence, both objective and subjective, Claimant's pain is in fact disabling.

Thompson, 987 F.2d at 1488 (citations and quotation omitted).

In evaluating a claimant's allegations of symptoms, the court has recognized a non-exhaustive list of factors which should be considered. Luna, 834 F.2d at 165-66; see also 20 C.F.R. §§ 404.1529(c)(3), 416.929(c)(3). These factors include:

>the levels of medication and their effectiveness, the extensiveness of the attempts (medical or nonmedical) to obtain relief, the frequency of medical contacts, the nature of daily activities, subjective measures of credibility that are peculiarly within the judgment of the ALJ, the motivation of and relationship between the claimant and other witnesses, and the consistency or compatibility of nonmedical testimony with objective medical evidence.

Kepler v. Chater, 68 F.3d 387, 391 (10th Cir. 1995) (quoting Thompson, 987 F.2d at 1489).[3]

---

[3] Luna, Thompson, and Kepler, were decided when the term used to describe the evaluation of a claimant's allegations of symptoms resulting from his impairments was "credibility determination." Although that term is no longer used, the applicable regulation never used that term and the procedure for evaluating a claimant's allegations of symptoms has not significantly changed. Revisions to Rules Regarding the Evaluation of Medical Evidence, 82 Fed. Reg. 5,844-01, 5,871 (Jan. 18, 2017) (codified at 20 C.F.R. § 404.1529). Moreover, the Tenth Circuit held its approach to credibility determination was consistent with the approach set forth in SSR 16-3p. Brownrigg v. Berryhill, 688 Fed. App'x. 542, 546 (10th Cir. 2017). Therefore, the three-step framework set out in Luna, based on 20 C.F.R. § 404.1529 (2017) is still the proper standard to be used as explained in the regulations in effect on May 16, 2023, when this case was decided. Nonetheless, to the extent, and only to the extent, that "subjective measures of credibility

The Commissioner has promulgated regulations suggesting relevant factors to be considered in evaluating a claimant's allegations of symptoms which overlap and expand upon the factors stated by the court:  Daily activities; location, duration, frequency, and intensity of symptoms; factors precipitating and aggravating symptoms; type, dosage, effectiveness, and side effects of medications taken to relieve symptoms; treatment for symptoms; measures the plaintiff has taken to relieve symptoms; and other factors concerning limitations or restrictions resulting from symptoms.  20 C.F.R. § 404.1529(c)(3)(i-vii).

The ALJ found Plaintiff's "statements concerning the intensity, persistence and limiting effects of [his] symptoms are not entirely consistent with the medical evidence and other evidence in the record for the reasons discussed" in the decision.  (R. 23).  The ALJ summarized Plaintiff's allegations of disabling symptoms and then explained the inconsistencies in the record evidence upon which he relied in discounting Plaintiff's allegations.  The court quotes the ALJ's discussion in this regard in its entirety:

> The claimant alleges he is unable to engage in any basic work activities secondary to swelling and constant pain, especially in his spine, feet, and hands.  He testified that his infusion therapy provides approximately 1.5 weeks of pain relief, but in the week leading up to his infusions, he is unable to engage in any activity.  He also reported he is sick to his stomach and fatigued for 2 days after his infusions.  Despite these infusions, he reportedly experiences a minor flare once a month and major flares on an annual basis.  During the relevant period, he also complained of pain with limited range of motion over shoulder level in his right arm.  He reported the pain would preclude lifting and/or carrying more than 5 pounds repetitively and 10 to 15 pounds occasionally, and he indicated he could not

---

that are peculiarly within the judgment of the ALJ;" Kepler, 68 F.3d at 391; relate to an examination of a claimant's character, it is specifically prohibited by SSR 16-3p, and is no longer a valid factor to be considered.

7

sit longer than 20 to 30 minutes, walk farther than 2 blocks or stand longer than 20 to 30 pounds [sic] at a time (Ex. 10F/2).  Nonetheless, the objective testing, his generally conservative treatment history, and the clinical signs and findings are inconsistent with the intensity and frequency of pain and limitations alleged.

For instance, the intensity and frequency of "flares" alleged is not supported by the objective medical record.  Despite alleging "flares a few times every week" in early 2020, nothing in the record indicates he required physician intervention or increased treatment during these flare[s] (Ex. 15F/20, 550, 663).  In April 2021, he reported an ongoing flare, but required no action by medical staff (Ex. 15F/20).  He was occasionally prescribed oral steroids for "flares" in 2019, but since January 2020, he has been prescribed Plaquenil, Remicade and/or Sulfasalazine (Ex. 20F/1).  However, he did not take an anti-inflammatory medication for a few months in late 2022 because he wanted to try natural inflammation treatments (Ex. 24F/40-42).  If the claimant's pain were as severe as alleged, it would be reasonable to assume he would require intensive treatment during "flares" or would continue to require prescribed pain relief outside the medication used to treat his history of ankylosing spondylitis.  Moreover, his rheumatologist did not indicate in contemporaneous treatment notes that the claimant had "flares" at all, and during the most recently documented follow up visit, his physical examination was unremarkable (Ex. 24F/39).

The clinical signs and findings observed and imaging of the claimant's spine are also inconsistent with the intensity and frequency of pain alleged.  First, the undersigned notes the claimant last underwent imaging of his spine in 2020, and prior to that time, an x-ray of his thoracic spine showed only mild spondylosis without ankylosing spondylitis (Ex. 6F/186).  MRIs of the claimant's lumbar and cervical spines also showed no more than mild disc desiccation at L5-S1 and only a small posterior annular tear without disc protrusion in his cervical spine (Ex. 6F/180-182).  As noted above, imaging of the claimant's right elbow and right knee also showed no more than mild degenerative joint changes (Ex. 9F/2; 13F/5).

The claimant alleged joint swelling in multiple reports, but physical examinations remained within normal limits contrary to his subjective allegations (e.g., Ex. 3F/38, 41; 20F/5; 22F/7).  Although he reportedly exhibited some swelling in 2016 and 2018, since the alleged date of disability, he has shown no signs of swelling on examination (Ex. 10F; 15F/99).  He also generally exhibited a steady, normal gait, as well as negative straight leg raise testing, normal sensation, full strength and motor

> functioning despite limited range of motion in his cervical and lumbar spines (Ex. 10F/2; 14F/12; 18F/50; 24F/40-42; 20F/1; 15F/549). Since the alleged date of disability, the claimant has shown no signs of ankylosing spondylitis on examination either.
>
> As for the alleged side effects to infusion treatment, the record is inconsistent with the frequency and duration reported. For instance, in January 2022, he reported only back pain and muscles aches [sic] a few days before his next infusion, and in January 2023, he reported only fatigue the day of his infusion (Ex. 26F/3; 11F/119). He has not sought emergent treatment secondary to dehydration with vomiting or atrophy secondary to limited activity for a couple of weeks each month, and he has not been prescribed additional medication to treat side effects of his infusions.
>
> Furthermore, while the claimant received massage therapy and acupuncture from a chiropractor with the VA, he has not undergone intensive treatment <u>specifically aimed at his spine</u>, including but not limited to injection therapy, physical therapy, or neurosurgical evaluation since the alleged date of disability (Ex. 13F/47; 20F/1). He was provided traction to use at home, which helps his spine pain, but he has not required increased treatment secondary to progressive ankylosing spondylitis (Ex. 21F/30).

(R. 23-25) (emphasis added). The ALJ later noted the history of Plaintiff's treatment for right shoulder pain and arthroscopic rotator cuff repair and stated he "has accommodated the claimant's right shoulder impairment, but his positive response to surgery is inconsistent with disabling right shoulder pain." Id. at 25.

As quoted above, the ALJ provided his rationale for discounting Plaintiff's allegations of disabling symptoms. Moreover, he cited record evidence in support of his rationale and that evidence supports the rationale given. In his Brief, Plaintiff repeats his allegations of disabling symptoms and argues that the ALJ did not explain what more "intensive" treatment Plaintiff should have sought but he points to no record evidence negating the rationale of the ALJ or compelling a contrary finding. (Pl. Br. 7-8). Thus, Plaintiff merely asks the court to reweigh the evidence regarding his allegations of

symptoms and find them consistent with the record evidence. That is a request the court may not accept. Bowman, 511 F.3d at 1272 (10th Cir. 2008) (quoting Casias, 933 F.2d at 800); accord, Hackett, 395 F.3d at 1172; see also, Bowling, 36 F.3d at 434.

Plaintiff acknowledges the ALJ found the record evidence inconsistent with the frequency and duration of Plaintiff's allegations of side effects due to his infusion treatment but argues, "the ALJ did not discuss supportive evidence in the record regarding [P]laintiff's reported symptoms." (Pl. Br. 11, 12). As is usually the case in a Social Security disability decision, the record here is equivocal regarding the severity of Plaintiff's symptoms with respect to his infusion treatment. As quoted above, the ALJ summarized Plaintiff's allegations of disabling side effects related to his infusions, noting he alleges only approximately 1.5 weeks relief in a month, an inability "to engage in any activity" "in the week leading up to his infusion," and "he is sick to his stomach and fatigued for 2 days after his infusions." (R. 23) (emphasis in original). It is the ALJ's duty to weigh the equivocal evidence and decide the weight to accord it. He has done so here, and he explained his bases and the evidence relied upon for discounting Plaintiff's allegations of disabling side effects. Without citing evidence compelling a different finding, Plaintiff's appeal to "supportive evidence in the record" is, once again, a request for the court to reweigh the evidence and substitute its judgment for that of the ALJ. It may not do so.

Plaintiff appeals to Dr. Baratham's treatment and opinion (Pl. Br. 8-12) and to the opinion of the medical consultant at the initial consideration, Dr. Hegde, over the opinion of the medical consultant at the reconsideration, Dr. Paci. Id. 15-16. The regulations

10

explain "How we consider and articulate medical opinions and prior administrative medical findings for claims filed on or after March 27, 2017." 20 C.F.R. § 404.1520c. That regulation provides that the Commissioner "will not defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) or prior administrative medical finding(s), including those from your medical sources." 20 C.F.R. § 404.1520c(a). It requires that the SSA will consider each medical source's opinions using five factors; supportability, consistency, relationship of source to claimant, specialization, and other factors tending to support or contradict a medical opinion or prior administrative medical finding. 20 C.F.R. § 404.1520c(a)(c)(1-5). It provides that the most important factors in evaluating persuasiveness are supportability and consistency. Id.

The regulation explains that the Commissioner's decision will articulate how persuasive the SSA finds all medical opinions and prior administrative medical findings. 20 C.F.R. § 404.1520c(b). The articulation requirement applies for each source, but not for each opinion of that source separately. 20 C.F.R. § 404.1520c(b)(1). It requires that the SSA "will explain how we considered the supportability and consistency factors for a medical source's medical opinions or prior administrative medical findings in your determination or decision." 20 C.F.R. § 404.1520c(b)(2).

Here, the ALJ explained his finding regarding the persuasiveness of the opinions of Dr. Hegde (the "medical consultant's initial opinion"), Dr. Paci (the "medical consultant's opinion upon reconsideration"), and Dr. Baratham:

11

> In making this finding, the undersigned finds the State agency medical consultant's initial opinion is unpersuasive although it is supported by a narrative report of the evidence considered. The limitation to standing and/or walking only 4 hours in an 8-hour workday, lifting only 5 pounds frequently, the gross and fine manipulation limitations and the occasional reaching limitations are all inconsistent with the claimant's positive response to shoulder surgery, his conservative/stable treatment history, including a period of time without NSAIDs, as well as the clinical signs and findings, including full extremity strength and a generally normal gait (Ex. 1A).
>
> Instead, the undersigned finds the State agency medical consultant's opinion upon reconsideration is partially persuasive because it is supported by a narrative report of the additional evidence received, and the limitation to light work with occasional overhead reaching with the right arm, occasional stooping and crawling, and frequent postural activity is generally consistent with the clinical signs and findings, including full extremity strength and a generally normal gait, mild objective abnormalities in his spine, and his positive response to surgery on his right shoulder (Ex. 4A).
>
> The claimant's rheumatologist, Aruna Baratham, M.D., opined in June 2021 that the claimant was "unable to hold meaningful employment due to his axial spondyloarthropathy manifested by generalized fatigue and stiffness despite treatment with biologic therapies" (Ex. 5F). This opinion is unpersuasive because whether the claimant is "disabled," or able to hold meaningful employment, is a determination reserved to the Commissioner (20 CFR 404.1527(d)). Moreover, this opinion is unsupported by the objective medical evidence as set forth above.

(R. 26).

The ALJ followed the correct legal standard, evaluated the persuasiveness of the prior administrative medical findings of Dr. Hegde and Dr. Paci and of the medical opinion of Dr. Baratham based upon the regulatory factors, and articulated his findings regarding the consistency and supportability factors. As to the evaluation of Dr. Baratham's opinion, Plaintiff argues it supports Plaintiff's allegations of symptoms. However, the court has already found the ALJ properly discounted Plaintiff's allegations

of symptoms. Moreover, Plaintiff does not attempt to dispute the reasons given to find her opinion unpersuasive. As to the medical consultants' prior administrative medical findings, Plaintiff tacitly acknowledges that he has had a positive response to shoulder surgery, but argues he was still undergoing physical therapy at the time of the hearing and was not restored to an uninjured condition. The question for the ALJ, however, is not whether a claimant has been made whole or is without pain, but whether, given his present condition and limitations, he is able to perform any substantial gainful activity. That Plaintiff has had a positive response to shoulder surgery is a reason to find Dr. Hegde's opinion unpersuasive and Dr. Paci's opinion partially persuasive.

Plaintiff argues, "It is not clear what the ALJ means by plaintiff's 'conservative/stable treatment history' other than he followed his doctor's advice to undergo physical therapy before having surgery." (Pl. Br. 16) (citing R. 25, but actually quoting R. 26). Plaintiff's argument ignores the decision in context and the record considered as a whole. The ALJ elaborated on his use of the term, noting "conservative/stable treatment history, including a period of time without NSAIDs [(nonsteroidal anti-inflammatory drugs)], as well as the clinical signs and findings, including full extremity strength and a generally normal gait." (R. 26). Plaintiff objects to the ALJ's reliance on his stopping NSAIDs, arguing "he started using a natural remedy to give his liver a break from the Naproxen and Motrin, apparently on his doctor's advise [sic]." (Pl. Br.16) (citing R. 56 (hearing testimony), 2804 (treatment record)).

Plaintiff testified he stopped taking Naproxen and started a natural supplement "to give my liver or whatever was causing the pain a break from the Naproxen and the

13

Motrin and all of those." (R. 56). However, he did not say it was on his doctor's advice. Moreover, the treatment note cited in Plaintiff's brief does not suggest the decision to stop NSAIDs was made on his doctor's advice. The record cited in Plaintiff's brief states in the "Counseling/Education" section, "Current use of nonsteroidal – He is taking [N}aproxen at this time, he can take it as needed, but does not feel well unless he takes it twice a day. He will continue taking it at this time, failed meloxicam [(Motrin)] before, maybe there is a role for Celebrex if needed in the future." (R. 2804). Apparently Plaintiff relies on the physician's statement that Plaintiff can take Naproxen "as needed" to imply he may not take it if not needed, and that is a reasonable conclusion, but the remainder of the doctor's statement demonstrates that Plaintiff suggested that he "needs" it twice a day. Moreover, earlier in the "History of Present Illness" section of the same treatment note, the physician noted, "He was trying curcumin and so he has not taken [N]aproxen for a few months, thinks [N]aproxen gave him pain in the right upper quadrant and so he stopped it." Id. 2802. What is clear is the physician did not advise Plaintiff to stop taking NSAIDs, and the record reveals the physician is somewhat confused since she stated Plaintiff will continue taking Naproxen. This disconnect becomes more significant in light of Plaintiff's testimony less than four months later that he "came off the Naproxen" "several months ago." (R. 55-56).

 Finally, Plaintiff's argument—that the RFC assessed by the ALJ and the limitations opined by Dr. Paci do "not take into account [P]laintiff's shoulder limitations for the period prior to his surgery, [nor] … account for plaintiff's residual post-surgery shoulder condition, as does the opinion of Dr. Hegde" (Pl. Br. 16)—ignores that the only

14

limitations Dr. Hegde opined due to Plaintiff's right shoulder rotator cuff injury was to frequent push and pull and to occasional reaching in all directions with the right upper extremity, and with that limitation Dr. Hegde, nevertheless, found Plaintiff not disabled. (R. 78-79, 80). The ALJ explained why he found Dr. Paci's opinion more persuasive than Dr. Hegde's and Plaintiff has not pointed to record evidence compelling a finding that Plaintiff's right upper extremity limitations were as great as opined by Dr. Hegde for at least any continuous 12-month period encompassinging the shoulder surgery. 20 C.F.R. § 404.1505(a) ("has lasted or can be expected to last for a continuous period of not less than 12 months.").

Plaintiff has not demonstrated error in any of the ALJ's Physical RFC Assessment findings.

### B. Mental RFC

Plaintiff argues the ALJ erred in evaluating Dr. Wells's opinion and failed "adequately [to] account for [P]laintiff's moderate limitations in his mental residual functional capacity in that he did not include any limitations for plaintiff's mild to moderate difficulty responding appropriately to work pressures, or moderate difficulties managing himself, or in maintaining concentration, persistence, and pace," and "did not include the [P]laintiff's inability to have frequent or sustained contact with large groups of people or to be absent from his workstation for 30 minutes whenever he experienced a panic attack." (Pl. Br. 20). He argues, "Limiting the plaintiff to unskilled, simple, and repetitive work does not adequately account for his moderate inability to concentrate and persist." Id. (citing R.M.M. v. Saul, 2020 WL 6701195 *4 (D. Kan. Nov. 13, 2020)).

The ALJ discussed the mental health treatment and evaluations of Plaintiff. (R. 26-27). He found the state agency psychological consultants' opinions unpersuasive because their finding only mild limitations in the four broad mental functional areas (the "paragraph B" criteria) was inconsistent with Plaintiff's ongoing mental health treatment. Id. 27. He explained his evaluation of Dr. Wells's opinion:

> Finally, the undersigned finds the psychological consultative examiner's opinion is partially persuasive (Ex. 12F). This opinion was partially based upon his estimated level of intellectual functioning and reports of previous work activity, but these findings pre-date the alleged date of disability and [are] unconfirmed. The consultative examiner also based the opinion that he would "likely fare poorly in work situations . . . involv[ing] frequent/ sustained contact with larger groups of people in the general public," solely upon the claimant's subjective reports. However, the remainder of this opinion is overall consistent with the clinical signs and findings, including good eye contact with the examiner, persistently euthymic mood, and intact attention and concentration levels. Thus, this opinion is only partially persuasive.

Id.

Plaintiff argues it is not clear what the ALJ meant when he said Dr. Wells's opinion "was partially based upon his estimated level of intellectual functioning and reports of previous work activity, but these findings pre-date the alleged date of disability and unconfirmed [sic]." (Pl. Br. 20). However, in context it can be understood that the ALJ recognized (1) Dr. Wells's estimate of Plaintiff's level of intellectual functioning was unconfirmed and (2) the reports of previous work activity pre-date the alleged date of disability and both reasons are bases to discount the opinions based thereon.

The court finds no error in the ALJ's alleged failure to "include any limitations for [P]laintiff's mild to moderate difficulty responding appropriately to work pressures, or

16

moderate difficulties managing himself, or in maintaining concentration, persistence, and pace." (Pl. Br. 20). Plaintiff cites no record evidence of the limitations alleged here but the court recognizes Dr. Wells opined he "would experience mild to moderate difficulties responding appropriately to work pressures at this time due to features of PTSD, as well as mental health factors associated with pain issues." (R. 1572). The court finds no record evidence (other than the ALJ's step three discussion (R. 22)) that Plaintiff would have any difficulty managing himself. And, Dr. Wells opined Plaintiff's "ability to maintain attention and concentration and maintain persistence and pace to perform simple and multi-step tasks appears to be adequate for sustained focus necessary during a normal workday. He would have no difficulty performing simple, repetitive tasks." Id. More importantly, Plaintiff ignores that it is his burden to show he cannot work and he points to no record evidence compelling a finding that the Mental RFC assessed by the ALJ does not accommodate mild to moderate difficulties responding to work pressures or the difficulties maintaining concentration, persistence, or pace as opined by Dr. Wells.

Plaintiff's argument the ALJ "did not include the [P]laintiff's inability to have frequent or sustained contact with large groups of people or to be absent from his workstation for 30 minutes whenever he experienced a panic attack" (Pl. Br. 20) fares no better. Dr. Wells did not opine Plaintiff must be away from his workstation for thirty minutes when he has a panic attack, and as found above the ALJ properly discounted Plaintiff's allegations of symptoms. Moreover, the ALJ discounted Dr. Wells's limitation from large groups of people because it was based "solely upon [Plaintiff's] subjective

17

reports." (R. 27). The record supports the ALJ's rationale and Plaintiff points to no evidence compelling a contrary finding.

Plaintiff's argument that limiting him "to unskilled, simple, and repetitive work does not adequately account for his moderate inability to concentrate and persist" ignores both Dr. Wells's opinion and the RFC assessed by the ALJ. Dr. Wells opined Plaintiff's ability "to perform simple <u>and multi-step tasks</u> appears to be <u>adequate</u> for sustained focus necessary during a normal workday," and "[h]e would have <u>no difficulty</u> performing simple, repetitive tasks." (R. 1572) (emphases added). Moreover, based in part on Dr. Wells's opinion, the ALJ found he "is able to apply common sense understanding to carry out detailed, but uninvolved, instructions in the performance of simple, routine, and repetitive tasks, in a work environment free of fast-paced production requirements, involving only simple, work-related decisions, with few, if any, workplace changes." (R. 23, finding no. 5) (bold omitted). Thus, it is clear that although the ALJ found Plaintiff limited to unskilled work, he did not find Plaintiff limited to simple and repetitive work. And Plaintiff does not point to evidence showing that the RFC assessed by the ALJ does not adequately account for the limitations actually assessed. The principle relied upon in <u>R.M.M. v. Saul</u> is simply not present or applicable here.

### C. **Vocational Expert Testimony**

Finally, Plaintiff's argument that the ALJ erred in relying on the VE testimony is without merit in the circumstances of this case. Plaintiff argues that <u>if</u> his ability "to reach was reduced from frequent to occasional … none of these [representative] occupations could be performed" (Pl. Br. 21); and <u>if</u> he missed two to three days' work a

month, "needed unpredictable breaks of 30 minutes twice a week, or would be off task 15% of the day," none of the representative occupations relied upon by the ALJ could be performed. (Pl. Br. 22). However, the conditions upon which Plaintiff rests this argument were not found by the ALJ, such relevant evidence in the record as a reasonable mind might accept as adequate to support a conclusion supports the ALJ's RFC assessment, and Plaintiff has not demonstrated that record evidence compels finding greater limitations. Plaintiff has shown no error in the ALJ's decision.

**IT IS THEREFORE ORDERED** that judgment shall be entered pursuant to the fourth sentence of 42 U.S.C. § 405(g) AFFIRMING the Commissioner's final decision.

Dated July 16, 2024, at Kansas City, Kansas.

s:/ John W. Lungstrum\_\_\_\_
**John W. Lungstrum**
**United States District Judge**